IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KIM R. JIM,

      Plaintiff,

v.                                                       No. CIV 17-1114 RB/JHR

SHIPROCK ASSOCIATED SCHOOLS, INC.,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Supplemental Motion for Summary Judgment and Memorandum in Support, filed on November 30, 2018. (Docs. 22; 23.) Having considered the motion, briefs, and relevant law, the Court finds the motion should be **GRANTED** and this case **DISMISSED** for lack of subject matter jurisdiction.

**I.**     **Background**[1]

Plaintiff Kim R. Jim is a former employee of Defendant Shiprock Associated Schools, Inc. (SASI). (*See* Doc. 1 (Compl.) ¶ 5.) SASI was incorporated as a nonprofit corporation under the laws of New Mexico in 1979 (*see* Doc. 22-A-1 at 2) and is registered to conduct business within the Navajo Nation (Doc. 22-A-4; *see also* Doc. 22-A ¶ 6). At the time of the allegations in the Complaint, SASI was (and still is) authorized by the Navajo Nation Board of Education to operate

---

[1] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to Plaintiff. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court recites only that portion of the factual and procedural history relevant to this motion.

Pursuant to Local Rule 56, the party moving for summary judgment "must set out a concise statement of all material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56(b). "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." *Id.* Plaintiff fails to follow Local Rule 56 in that she did not specifically controvert any of SASI's facts. (*See* Doc. 27.) To the extent Plaintiff fails to controvert SASI's recitation of the material facts, the Court deems them undisputed.

1

Navajo community schools on the Navajo reservation in Shiprock, New Mexico, pursuant to the Navajo Nation Code, *see* 10 N.N.C. § 201, and the Tribally Controlled Schools Act (TCSA), 25 U.S.C. § 2501. (*See* Doc. 22-A ¶ 8 (citing Docs. 22-A-7A; 22-A-8); *see also* Doc. 22-A-1.) SASI is the grantee of "Bureau of Indian Education (BIE) funds received for operation of educational programs on the Navajo Nation for the benefit of Indian[2] students . . . and surrounding communities per the TCSA . . . ." (Doc. 22-A ¶ 9 (citing Docs. 22-A-9; 22-A-10).) SASI's Navajo community schools also "receive a small amount of U.S. Department of Agriculture school lunch funding channeled to the school through the State of New Mexico and some federal e-rate (internet infrastructure) funding awarded by the Federal Communications Commission." (*Id.* ¶ 10.)

SASI Board Members must be enrolled members of the Navajo Nation and are elected pursuant to the Navajo Nation Election Code. (*See id.* ¶¶ 11–12.) *See also* 10 N.N.C. §§ 201–02. SASI must follow the Navajo Nation's educational laws and relevant standards. (*See* Doc. 22-A ¶ 15.) *See also* 10 N.N.C. § 200(B). The Navajo Nation Board of Education has the authority to both remove board members and to assume control of local community controlled schools if SASI fails to comply with the applicable regulations. (*See* Doc. 22-A ¶¶ 23, 27.) *See also* 10 N.N.C. §§ 106(G), 202. Over 98% of SASI's students are enrolled in federally recognized American Indian tribes (Doc. 22-A ¶ 31 (citing Doc. 22-A-30)), and approximately 80% of SASI's operational employees are enrolled members of federally recognized American Indian tribes (*id.* ¶ 30 (citing Doc. 22-A-29)).

---

[2] As the word "Indian" was commonly used when many of the statutes and opinions discussed herein were published, the Court retains its usage in quotations. Otherwise, the Court uses the term "Native" or "American Indian" when reference to a specific tribe is not possible. *See* Andrea Wallace, *Patriotic Racism: An Investigation into Judicial Rhetoric and the Continued Legal Divestiture of Native American Rights*, 8 DePaul J. for Soc. Just. 91, 93 n.9 (2014).

Ms. Jim alleges that SASI discriminated against her and terminated her because of her pregnancy and maternity leave. (*See* Compl. ¶¶ 5–13.) She now brings suit for pregnancy discrimination pursuant to Title VII of the Civil Rights Act of 1964 (Title VII) and the Americans with Disabilities Act (ADA). (*See id.* ¶ 1.) For the Court to have subject matter jurisdiction over Ms. Jim's claims, SASI must be a covered employer under both statutes. Ms. Jim argues that SASI is a covered employer. (*See* Doc. 27.)

SASI contends that it is a "tribal organization" exempted from the definition of an employer under both Title VII and the ADA and disagrees that the Court has subject matter jurisdiction over this lawsuit. (*See* Doc. 22 at 2.) On August 28, 2018, this Court issued a Memorandum Opinion and Order converting SASI's motion to dismiss to a motion for summary judgment and giving the parties time for jurisdiction-related discovery. (*See* Doc. 18.) SASI's motion for summary judgment is now ready for decision.

## II. Summary Judgment Standard of Review

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id*. The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

### III. SASI qualifies as an "Indian tribe" for purposes of Title VII and the ADA.

Ms. Jim alleges discrimination under both Title VII and the ADA. (*See* Compl.) "For this Court to have subject matter jurisdiction pursuant to either" statute, SASI "must be defined as an employer or included as a covered entity under the Acts." *Giedosh v. Little Wound Sch. Bd., Inc.*, 995 F. Supp. 1052, 1055 (D.S.D. 1997). "Both the ADA and Title VII exclude as an employer an 'Indian tribe,' 42 U.S.C. § 12111(5)(B)(i) and 42 U.S.C. § 2000e(b), respectively, and neither Act defines an 'Indian tribe.'" *Id.* at 1055–56. The Court must decide, then, whether SASI qualifies as an "Indian tribe" for purposes of both Acts, thus excluding it from the legal requirements of Title VII and the ADA.

"In determining whether the Board is an 'Indian tribe,' this Court must keep in mind . . . [the] 'settled principle of statutory construction that statutes passed for the benefit of dependent Indian tribes are to be liberally construed, with doubtful expressions being resolved in favor of the Indians.'" *Id.* at 1056 (quoting *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138 (1984) (internal citations omitted)). In examining a similar question, the Tenth Circuit in *Dille v. Council of Energy Resource Tribes* (CERT) first considered

congressional intent as expressed in Title VII's legislative history. *See* 801 F.2d 373, 374–75 (10th Cir. 1986). The *Dille* plaintiffs had sued their employer—a council of 39 tribes that collectively managed energy resources—for discrimination based on sex pursuant to Title VII. *Id.* at 374. The Tenth Circuit determined that Title VII's legislative history makes clear that Congress intended the statute's exemption "to apply to an organization comprised of many Indian tribes[,]" *id.* at 374, in part because "[t]he purposes of CERT mirror the purposes of the exemption for Indian tribes in" Title VII, *id.* at 375. CERT was created "to advance the economic conditions of its [39] member tribes[, which] is precisely the type of activity that Congress sought to encourage by exempting Indian tribes from the requirements of Title VII." *Id.*

Relying on the Tenth Circuit's reasoning in *Dille*, the *Giedosh* court found that the Little Wound School Board, Inc. (the Board) qualified as an "Indian tribe" for purposes of Title VII and the ADA. *See* 995 F. Supp. 2d at 1056–59. The *Giedosh* court found the following factors significant: (1) the Board was a nonprofit corporation incorporated under state law, *id.* at 1054; (2) "the Board's membership [was] comprised solely of members of the Oglala Sioux Tribe[,]" and board members were democratically-elected "[t]o further the Tribe's policy of community participation[,]" *id.* at 1055 (citations omitted); (3) the school was required to adhere to tribal resolutions and ordinances and was tribally chartered, meaning the Tribe had the authority to "step in at any time, for good reason, and assume the control and operation of the school[,]" *id.* (citations omitted); (4) "[l]ike in *Dille*, the purpose of establishing the organization [was] to further the development, in this case the educational development, of the children living in Indian country, and to involve the Indian community in the education of the Indian children[,]" *id.* at 1057; (5) "[t]he Board is made up of members of the Tribe, and those members are democratically elected[,]" *id.*; and (6) "[t]he school, which is operated by the Board, services tribally enrolled members in

5

the Kyle community and the surrounding area of the Pine Ridge Indian Reservation," *id.*; *accord Redman v. St. Stephens Indian Sch. Educ. Ass'n, Inc.*, No. 05-CV-110J, 2006 WL 8433204 (D. Wyo. Jan. 13, 2006).

The record before the Court supports the same conclusion in this case. Congress has recognized the United States' "obligation to assure maximum Indian participation in the direction of educational services" to promote tribal self-determination. *See* 25 U.S.C. § 2501(a). To that end, the Navajo Nation Board of Education authorizes SASI to operate Navajo community schools, and SASI receives BIE funds to manage those educational programs. (*See* Doc. 22-A ¶¶ 8 (citing Docs. 22-A-7A; 22-A-8), 9 (citing Docs. 22-A-9; 22-A-10).) Like the Board in *Giedosh*, SASI is a nonprofit corporation incorporated under state law, and SASI was authorized by Navajo Tribal Council Resolution. (*See* Docs. 22-A-1 at 2, 14; 22-A-4.) Unlike the Board in *Giedosh*, SASI is not tribally chartered, but it did attempt in 2012 to convert to a Navajo Nation form of corporate charter. (*See* Doc. 22-A ¶ 6 (citing Doc. 22-A-5).) SASI did not complete that process. (*Id.*)

"All SASI Board Members are elected per the Navajo Nation Election Code and are enrolled members of the Navajo Nation," which retains authority to remove Board Members pursuant to the rules and regulations of the Navajo Nation Election Code. 10 N.N.C. § 202. (*See also* Doc. 22-A ¶¶ 12 (citing Doc. 22-A-12).) SASI is "subject to [the Navajo Nation's] educational laws" and is "held accountable to the Navajo Nation . . . for ensuring that their students make adequate yearly progress in meeting" the standards set by the Navajo Nation. (*See id.* ¶ 15 (quoting 10 N.N.C. § 200(B)).) *See also* 10 N.N.C. § 205. If SASI fails to meet these standards or comply with applicable rules and regulations, the Navajo Nation Board of Education has the authority "[t]o assume control of local community controlled schools . . . ." 10 N.N.C. § 106(G). (*See also* Doc. 22-A ¶ 27.)

SASI's schools are located on the Navajo Reservation, and the vast majority (over 98%) of its students are enrolled in federally recognized tribes. (*See* Doc. 22-A ¶¶ 8, 31 (citing Docs. 22-A-8; 22-A-30)).) Approximately 80% of SASI's "employees who carry out SASI's school operations are enrolled in federally recognized Indian tribes[,]" both at the present time and at the time of the allegations in the Complaint. (*Id.* ¶ 30 (citing Doc. 22-A-29).) In short, SASI meets almost all of the factors the *Giedosh* court discussed.

Ms. Jim advances a number of arguments to persuade the Court that SASI does not qualify as an "Indian tribe." (*See* Doc. 27.) First, she contends that SASI is regulated by 25 C.F.R. § 38.10(e), which states "the policy of the BIA that all employees and applicants for employment shall be treated equally when considered for employment or benefits of employment regardless of . . . physical health . . . ." (*Id.* at 1 (quoting 25 C.F.R. § 38.10(e)).) Ms. Jim has offered no evidence or authority to establish that SASI is subject to 25 C.F.R. § 38. As SASI explains, "Part 38 does not apply to tribally controlled schools operated by tribes or tribal organizations such as SASI under" the TCSA. (Doc. 28 at 4.) 25 C.F.R. § 38.1(a) states that Part 38 "applies to all individuals appointed or converted to contract education positions as defined in § 38.3 . . . ." 25 C.F.R. § 38.3 refers to "agency school boards" as defined in section 1139(1) of Public Law 95-561, whereas SASI was authorized pursuant to the TCSA, Public Law 100-297. (*See* Docs. 22-A ¶ 8; 22-A-7A; 22-A-8.)

Ms. Jim next argues, without supporting authority, that because SASI's "employees are federal employees for the purpose of the Federal Tort Claims Act" (FTCA), they must also be subject to Title VII and the ADA. (Doc. 27 at 4–5.) But the Ninth Circuit has specifically found that although Congress has "provided that the United States would subject itself to suit under the [FTCA] for torts of [certain] tribal employees[,]" Congress did not intend this section "to provide

a remedy against the United States in civil actions unrelated to the FTCA." *Snyder v. Navajo Nation*, 382 F.3d 892, 897 (9th Cir. 2004) (citations omitted).

Ms. Jim summarily concludes that the federal government, as SASI's "primary funding source," controls SASI, and the Navajo Nation's involvement is "minimal." (*Id.* at 1, 4–5.) The Court disagrees. SASI is required to comply with Navajo Nation rules and regulations, and the Navajo Nation Board of Education may step in and assume control if SASI fails to comply. The Navajo Nation's involvement is not "minimal."

Ms. Jim next contends that SASI does not qualify as an "Indian tribe" because it receives "funding from sources not connected to its students' status as tribe members . . . ." (*Id.* at 7, 11.) Ms. Jim relies here on *National Labor Relations Board v. Chapa De Indian Health Program, Inc.*, in which the Ninth Circuit held that the defendant, which "provide[d] free health services to qualifying" American Indians, was not an "Indian tribe" for purposes of the National Labor Relations Act (NLRA), 29 U.S.C. §§151–69. *See* 316 F.3d 995, 997, 998, 1002 (9th Cir. 2003). The court relied in part on the fact that the defendant was funded by "MediCal and third-party insurers as well as from" federal funding via Indian Health Service pursuant to the Indian Self-Determination Act, 25 U.S.C. § 450(b). *Id.* at 997, 1000. *Chapa De* is inapposite, primarily because the court was considering whether the defendant was an "Indian tribe" pursuant to the NLRA, which does not include an "Indian tribe" exemption.[3] *See id.* at 999; 29 U.S.C. § 152(2). Regardless, SASI acknowledges that its Navajo community schools "receive a small amount of U.S. Department of Agriculture school lunch funding channeled to the school through the State of New Mexico and some federal e-rate (internet infrastructure) funding awarded by the Federal

---

[3] *Chapa De* is also distinguishable from the circumstances here because none of its board members were members of the tribe it serviced, it operated on non-Indian land, almost half of the patients it serviced were non-Indian, and "[a]t least half of its non-professional employees . . . [we]re non-Indian . . . ." *See Chapa De*, 316 F.3d at 997, 1000.

Communications Commission." (Doc. 22-A ¶ 10.) But "[a]ll instructional and administrative funds for SASI's schools are awarded by the BIE[,]" and "SASI schools do not receive any state educational or instructional funding." (*Id.*) In *Redman*, a case that also relied heavily on the *Giedosh* decision, the court found that the school board was an "Indian tribe" for purposes of the ADA and the Rehabilitation Act where it received the majority of its funding from the BIA, but had also received some funding from the state. 2006 WL 8433204, at *4; *accord Giedosh*, 995 F. Supp. at 1054 n.1, 1057 (noting that the defendant school board "receive[d] federal government funds under the authority of the Indian Self-Determination and Education Assistance Act [(ISDEAA)], the [TCSA], and other federal statutes[,]" sought "private funding from foundations and individuals[,]" and did not receive any state funding). The Court finds that because SASI receives its instructional and administrative funds—the majority of its funding—from the BIE, the fact that it receives other funding does not prevent it from being classified as an "Indian tribe" under these circumstances.

Ms. Jim argues that SASI should not qualify as an "Indian tribe" because it "is a private corporation that was incorporated in the State of New Mexico . . . ." (Doc. 27 at 8.) The *Giedosh* plaintiff advanced the same argument, but the court found that fact irrelevant because: (1) the school's students were tribally enrolled members, the Board was comprised of members of the Navajo tribe, and the Tribal Council authorized the school to contract with the BIA; (2) "the school is a tribal organization under the ISDEAA"; and (3) "ambiguities in federal law have been construed generously in order to comport with . . . traditional notions of sovereignty and with the federal policy of encouraging tribal independence." 995 F. Supp. at 1057–59 (discussing *Sage v. Sicangu Oyate Ho, Inc.,* 473 N.W.2d 480, 483 (S.D. 1991)) (internal quotation marks, brackets, and citation omitted). The Court reaches the same conclusion here. Again, over 98% of SASI's

students are enrolled in federally recognized tribes. (Doc. 22-A ¶ 31 (citing Doc. 22-A-30).) Ms. Jim emphasizes the 2% of students who are non-Native, but SASI explains that those students are the children of SASI teachers or Indian Health Service clinic staff, and "SASI has not received any tuition reimbursements for the small number of non-Indian students it serves."[4] (*Id.* ¶ 32.) SASI's board members are enrolled members of the Navajo Nation (*id.* ¶ 12 (citing 10 N.N.C. § 202)), and SASI is authorized by the Navajo Nation Board of Education to operate Navajo community schools (*see id.* ¶ 8). Second, the Navajo Nation Board of Education classifies SASI as a tribal organization. (*See* Doc. 22-A-7A at 2.) Third, the Court agrees that any ambiguity should be resolved in favor of SASI.

Ms. Jim attempts to distinguish *Dille*, where the court relied on congressional intent to find that CERT qualified as an "Indian tribe." (Doc. 27 at 9–10.) The *Dille* court "concluded that the purpose of the exemption was to 'promote the ability of sovereign Indian tribes to control their own economic enterprises.'" (*Id.* at 10 (quoting *Dille*, 801 F.2d at 375).) Ms. Jim contends that this purpose is inapplicable here, where SASI is accused of discriminating against an employee due to her pregnancy. (*Id.*) While the Court acknowledges that Congress was likely not implicitly condoning discrimination in exempting "Indian tribes" from Title VII or the ADA, the statutory language is clear, and the Tenth Circuit has reiterated "that this language 'completely exempts the activities of Indian tribes from the requirements of Title VII.'" *Johnson v. Choctaw Mgmt./Servs. Enter.* 149 F. App'x 800, 802 (10th Cir. 2005) (quoting *Dille*, 801 F.3d at 276) (citing *Duke v. Absentee Shawnee Tribe of Okla. Hous. Auth.*, 199 F.3d 1123, 1126 (10th Cir. 1999)). The Court is not at liberty to carve out exceptions to this language.

---

[4] Ms. Jim also points to the 20% of SASI's employees who are non-Native. (Doc. 27 at 10–11.) She relies, though, on *Chapa De*, which the Court has already found is inapposite in this context.

Based on the record before the Court, the Court finds that Congress intended SASI to fall under the definition of an "Indian tribe" for purposes of Title VII and the ADA. "The canons of construction require this Court to liberally interpret the definition contained in the statute and to resolve any doubts in favor of the Indians." *Giedosh*, 995 F. Supp. at 1059. Consequently, the Court does not have subject matter jurisdiction to proceed over this lawsuit.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Supplemental Motion for Summary Judgment and Memorandum in Support (Docs. 22; 23) is **GRANTED** and this case is **DISMISSED** for lack of subject matter jurisdiction.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE